Michael E. Sweeney, J.
This is a retrial of an action which was originally commenced in August of 1954 by the plaintiff, an attorney, against his mother to compel her to transfer to him certain securities which he removed in September of 1953, with her permission, from the mother’s safe-deposit box at the Emerson National Bank in Warrensburg, New York. The plaintiff retained these securities, but they were not indorsed by the mother. The latter, in her answer after making certain denials to the complaint, interposed a counterclaim, demanding the return to her of certain other securities removed at the same time as those mentioned in the complaint. These securities, the mother had indorsed and they were subsequently registered in the name of the plaintiff.
The mother died in 1958, subsequent to the original trial. Her will was contested and it resulted in a jury trial held in Supreme Court in Warren County in the Fall of 1959. Subsequently, the plaintiff sought a new trial of the original action because of newly discovered evidence brought out during the will contest. This newly discovered evidence consisted of a letter written by the mother the same day on which the will offered for probate was executed. The Appellate Division in Reoux v. Reoux (16 A D 2d 543) granted a new trial. The new trial, however, related solely to the counterclaim. The First National Bank of Glens Falls, as executor of the estate of the mother, has been substituted as defendant.
The retrial consisted mainly of reading into evidence excerpts of testimony of witnesses who testified at the original trial and in the will contest. Some of the testimony adduced at the first trial was not produced at this trial. In addition, there was proof offered at the present trial which was new. I am confined to the proof presented at the new trial, together with certain rulings of law which the Appellate Division had previously made and which were conceded to be the law of the case. The Appellate Division, in granting the new trial, took great pains to point out that any observations made by it in granting the *444 new trial were not determinative of the issues upon a retrial. Consequently, the result of the retrial depends upon the conclusions reached -by me as the trier of the facts from all of the proof presented at such retrial.
Defendant contends that the proof produced on the retrial indicates that the transfer of the stocks in question did not constitute a gift freely and voluntarily made, but resulted from the influence and coercion exerted by the plaintiff upon his aged mother while he was acting in a son-mother, lawyer-client relation with her. Defendant further maintains that the letter of November 9,1953 which accompanied the execution of the will of that date and which was the newly discovered evidence upon which the Appellate Division granted a new trial, does not debilitate its contention.
Plaintiff contends that the transfer of the securities in question was voluntarily and freely made. He further maintains that the letter of November 9,1953 not only supports this contention, but also reaffirms the original gift.
The sole question to be determined is whether or not the proof offered on the retrial is sufficient to establish a free and voluntary gift of the securities in question.
Since we are dealing solely with the counterclaim, the burden is on the defendant to prove that the securities in question were not voluntarily given, but that the transfer was in fact made involuntarily because of fraud and duress. I should add, however, that due to the confidential relationship of the parties, it would require little proof to shift this burden to the plaintiff and place on him the onus of establishing that the transfer was freely made.
There appears from the testimony that up to a certain time, the defendant mother had contemplated leaving the residual of her estate to the plaintiff and the plaintiff’s sister. A will executed as recently as July 21, 1953 followed this pattern. There is also evidence in the record that subsequent to the death of the father in 1938 defendant mother made gifts to both her son and daughter. During these years the plaintiff often acted as attorney for his mother. He was not the sole attorney, however, for the will which was ultimately admitted to probate was drawn by another attorney. The record also indicates that the plaintiff’s sister’s husband, an attorney, represented the defendant mother from time to time.
There came a time in September of 1953 when the plaintiff learned that his mother had made substantial gifts of securities to his sister. At about this time the securities in question were removed from the safe-deposit box with the mother’s written *445 permission, and shortly thereafter, they were indorsed to the plaintiff by the mother. At this particular time, the mother was recuperating from a recent illness and was residing with the plaintiff. Soon thereafter, she left plaintiff’s residence to reside with the sister. It was during the period that she was residing with the sister that the sister’s attorney husband took the mother to an independent attorney to have the will drawn which ultimately turned out to be the one which was admitted to probate. This will was executed on November 9, 1953. This was some two months subsequent to the time the mother indorsed the securities in question to the plaintiff. On this very date the mother wrote a letter explaining why she did not make any provision in the will for the plaintiff son. This letter is the chief reason for the Appellate Division’s granting the new trial. The letter reads as follows: “ November 9, 1953. The First National Bank of Glens Falls, Glens Falls, New York. Gentlemen: By my Will of this date, I have made no provision for my son, Harry Beoux. My reason for this action is that I have made transfers of securities to him in my lifetime, which with his other assets, should adequately provide for him and his family. I have reached this conclusion without suggestion from anyone, and as a result of considerable thought on my part. Very truly yours, Adelia H. Beoux. Witnesses: B. W. Francis, A. D. Clark.”
On August 2,1954, the mother also wrote a letter to the plaintiff in reply to one he had written her. These two letters, plus the new will, viewed as a whole, are most significant. The August 2 letter reads as follows: “ August 2, 1954. Dear Harry: I have received your registered letter demanding that I turn over all of my stocks to you. You told me last winter that the paper you had me sign was for the Imperial and other stocks that I gave you last fall. I never intended giving you any more of my stock than you already had and I am not going to give you any more. Mother. ’ ’
This latter letter refers to certain stocks that the mother had transferred to the plaintiff, including the Imperial stock which is involved in the counterclaim, and it states that they were given ‘ ‘ last fall ’ ’, which would be the Fall of 1953, the time when the plaintiff contends the stocks in question were given to him.
I conclude that the letter of November 9, 1953 indicates that the mother was aware that she had transferred these securities to the plaintiff son and intended them as a gift. On that day there could have been no influence exerted on behalf of the plaintiff. He was not there. On the contrary, the sister was *446 present. The will made on this same day was drawn within two months after the transfer in question. Insofar as the son was concerned, it was totally inconsistent with this previous will because it made no provision for plaintiff. This leads me to conclude that the mother intended the September, 1953 securities transfer to be the manner in which she was providing for her son. This conclusion is further substantiated by the testimony of the attorney who prepared this final will and who testified that he understood the mother had made previous substantial gifts to the son.
This conclusion I reach is further corroborated by the letter of August 2, 1954. Here again the mother is not under the influence of the plaintiff. She is making her home with the sister. She refers to the transfer of the stock in question, specifically mentioning the Imperial stocks as the stocks “I gave you last fall ” (1953). How easy it would have been for her to say. 1 ‘ You took these stocks from me and I want them returned,” or “I never intended you to have them”. It appears to me her intention was just the opposite. She had, since the transfer of these stocks in September, 1953, performed three separate and distinct acts which, when taken together and examined in light of all the circumstances, strongly indicate to me that she desired the plaintiff to have the securities in question. First, she engaged a disinterested lawyer and prepared a new will by which she left nothing to the plaintiff son. Secondly, she carefully explained this act to the executors, and finally, she wrote the letter of August 2, 1954, again referring to the securities, some of them by name, as gifts.
I conclude therefore, from all of the proof and particularly these last-mentioned acts, two of which were done with the aid of counsel and all of which were done at a time when she was not under the control of the plaintiff, that the mother, in her own mind, had finally straightened out once and for all the disposition of her property and intended to let the matter end there.
In summary, I conclude on this record that the transfer of the securities to plaintiff in September of 1953 was intended to be a gift, and further that it was freely and voluntarily made.
At the trial defendant objected to the admission of certain proof on the ground that section 347 of the Civil Practice Act was violated. There were several such incidents. The defendant had a continuing objection and the court, in each case, reserved. I now sustain the objection. I did not consider this testimony in my decision.
Counterclaim dismissed on the law and on the facts.